**NOT FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 7 |
| JAN MARASEK and JOAN BYRON-MARASEK, | Case No.: 08-30919 (MBK) |
| Debtors. | |

---------------------------------------------------------X

| | |
|---|---|
| THEODORE LISCINSKI, JR., ESQ., CHAPTER 7 TRUSTEE, | |
| Plaintiff, | Adversary No.:  11-2626 (MBK) |
| v. | |
| JAN MARASEK and JOAN BYRON-MARASEK, *et al.* | |
| Debtors/Defendants. | |

---------------------------------------------------------X

APPEARANCES:

Theodore Liscinski, Jr., Esq.
265 Davidson Ave
Suite 200
Somerset, NJ 08873
Chapter 7 Trustee

Jan Marasek
Joan Byron-Marasek
PO Box 101
Clarksburg, NJ 08510
Debtors/Defendants, *Self-Represented*

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

## I.   Introduction

This matter is before the Court upon the motions ("Motions") of Jan Marasek and Joan Byron-Marasek ("Debtors" or "Defendants"), requesting that the Court dismiss the Chapter 7 Trustee's adversary complaint, which seeks to recover a certain pre-petition transfer of real property by the Debtors pursuant to 11 U.S.C. §§ 544, 547, 548, 549, and 550.  The Court has reviewed the pleadings submitted and issues the following ruling:

## II.   Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court, dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   Facts/Procedural History

On October 27, 2008 ("Petition Date"), the Debtors filed a voluntary Chapter 13 petition. On July 1, 2011, the Debtors' case was converted to a Chapter 7 proceeding and Barry Frost was appointed as the Chapter 7 Trustee.  On September 8, 2011, Theodore Liscinski, Jr. ("Trustee") succeeded Barry Frost as Chapter 7 Trustee in light of Mr. Frost's withdrawal due to certain conflicts of interest.  On November 29, 2011, the Trustee filed the within adversary complaint ("Complaint") against the Debtors, The Marasek Trust, Alexander Marasek, and Christopher Marasek.

In short, the Trustee's Complaint seeks to recover, as property of the Debtors' bankruptcy estate, certain real property located at 463 Monmouth Road in Jackson, New Jersey ("Property"). As set forth by the Trustee in his trial brief, and as acknowledged by the Debtors in their Motions, the Debtors, in 1982, created a trust in which the Debtors intended to transfer legal title to the Property. However, as asserted by the Trustee, and as ***admitted*** by the Debtors in their pleadings, the documentation evincing the trust was not recorded with the Ocean County Clerk's Office until on or about July 8, 2008. As such, the Trustee argues, *inter alia*, that 2008 is the operative date of transfer, which exposes the Property to avoidance under the Bankruptcy Code. Conversely, the Debtors claim that the operative date of transfer is when the trust was created in 1982.

On February 7, 2013 and May 1, 2013, respectively, the Debtors filed their Motions, which include a summary judgment motion ("Summary Judgment Motion") and a motion for default/dismissal/summary judgment regarding the Trustee's Complaint ("Dismissal Motion"). See Docket Nos. 33 and 38. On May 31, 2013, the Debtors filed a supplemental submission in further support of their Dismissal Motion. See Docket No. 39. On June 4, 2013, the Trustee filed a trial brief in response to the Motions and, on September 9, 2013, the Debtors filed a reply to the Trustee's submission. See Docket Nos. 40 and 41.

**IV.    Dismissal Motion**

Although the Debtors filed their Summary Judgment Motion prior to their Dismissal Motion, the Court will first address the Dismissal Motion, as that motion primarily deals with narrow procedural issues. At the outset, the Court notes that the Debtors – as is their right – have

taken to filing numerous pleadings and requests for relief in this case, many of which having been filed on an emergent basis and resulting in appeals to the District Court of New Jersey and the Third Circuit Court of Appeals.[1]  In addition, several of the Debtors' prayers for relief have been styled in such a way as to create the possibility of confusion on the docket by requesting various forms of relief in a single pleading.  Now, the Debtors seek dismissal of the Trustee's Complaint based primarily on the Trustee's alleged failure to seek proper adjournments or adequately respond to the Debtors' discovery requests.

Given the Debtors' convoluted filings, and more importantly their status as *self-represented* Debtors, the Court recognized, and continues to recognize, the importance of proceeding with caution and issuing rulings on the merits, as opposed to narrowly focusing on procedural niceties.  See Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines), 125 F.3d 120, 129 (3d Cir. Del. 1997) ("Generally, rules of procedure should be liberally construed" and "the Supreme Court emphasized that, 'mere technicalities should not stand in the way of consideration of a case on its merits.'") (citations omitted); Foman v. Davis, 83 S. Ct. 227, 230 (U.S. 1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such

---

[1] The Debtors' most recent filings include: (i) a Writ of Mandamus to the Third Circuit Court of Appeals ("Third Circuit") seeking review of Bankruptcy Court Judge Michael B. Kaplan's refusal to recuse himself from presiding over their Chapter 7 proceeding; (ii) a motion to the Third Circuit to stay the within Motions and trial in the Bankruptcy Court ("Third Circuit Stay Motion"); and (iii) a motion for stay in the Bankruptcy Court pending disposition of the Writ of Mandamus ("Bankruptcy Court Stay Motion"). See Third Circuit, Case No. 13-3328, and Bankruptcy Court Docket No. 42, respectively. On August 2, 2013, the Third Circuit denied the Third Circuit Stay Motion, and on September 11, 2013 this Court entered an order denying the Bankruptcy Court Stay Motion. See Third Circuit, Case No. 13-3328, and Bankruptcy Court Docket No. 43. Additionally, on September 24, 2013, the Third Circuit issued an opinion denying the Debtors' Writ of Mandamus, noting that the Debtors "provide no basis for holding that Judge Kaplan's denial of the recusal motion was improper." See Third Circuit, Case No. 13-3328. Accordingly, it is clear that this Court may issue the within ruling on the Debtors' Motions.

mere technicalities."); see also Erickson v. Pardus, 551 U.S. 89, 94 (U.S. 2007) (*Pro se* pleadings should be liberally construed to do substantial justice.). Indeed, while the Debtors so flippantly accuse the Court of exercising preferential treatment toward the Trustee, the Debtors wholly ignore the fact that the Court has gone above and beyond in terms of accommodating ***the Debtors'*** numerous requests for adjournments in this matter, so as to afford the Debtors adequate opportunity to address the legal issues presented to the Court. To be sure, even a cursory review of the Debtors' bankruptcy dockets (both main and adversary) demonstrate that the Court has granted ***no less than ten*** adjournment requests by the Debtors throughout their bankruptcy case.

In the same vein, it is axiomatic that the Court has discretion to relax court rules in the interests of justice. See Faden v. Faden, 1990 U.S. Dist. LEXIS 16075 (D.N.J. Nov. 5, 1990) ("In any case, whether to grant an adjournment is in the court's discretion."). In fact, the local bankruptcy rules for the District of New Jersey state just that:

> (a) These rules shall be construed to secure the just, speedy and inexpensive determination of cases and proceedings in the Court. The application of these rules in any case or proceeding **may be modified or relaxed by the Court in the interests of justice**.

D.N.J. LBR 1001-1(a) (emphasis added); see also In re Alcon Demolition, 204 B.R. 440, 445 (Bankr. D.N.J. 1997) ("Local Rule 1[(a)] provides that the application of any of the local rules can be modified or relaxed by the court in the interests of justice."). In light of the foregoing, and despite the alleged procedural infirmities advanced by the Debtors in their Dismissal Motion, the Court finds it inappropriate to rule in favor of the Debtors on such technicalities.

Furthermore, to the extent the Debtors rely on the Trustee's failure to respond to discovery, the Debtors also miss the mark. In their Dismissal Motion, the Debtors state that they

5

sent two separate discovery requests to the Trustee – one on September 19, 2012 and the other on January 4, 2013.[2] See Dismissal Motion, p. 18. Although the Debtors admit that the Trustee answered those requests, the Debtors assert that the Trustee's answers are non-responsive. Notwithstanding the Trustee's allegedly inadequate responses, however, the Debtors failed to seek more definitive responses or rectify the Trustee's allegedly defective responses during the discovery period.

Additionally, there is no evidence to suggest that the Debtors even attempted to meet and confer with the Trustee, in good faith, prior to filing their "emergent" Dismissal Motion, as is encouraged by the courts. See, e.g., Warsco v. Moran Food, Inc. (In re DFI Proceeds, Inc.), 441 B.R. 914, 916 (Bankr. N.D. Ind. 2011) ("The discovery rules themselves are designed to encourage litigants to confer and agree upon discovery related issues without involving the court."). Nor did the Debtors file a motion to compel discovery pursuant to Federal Rule of Civil Procedure 37, as incorporated by Federal Bankruptcy Rule 7037, which also includes a good faith requirement to meet and confer.[3] See Fed. R. Civ. P. 37(a)(1); see also St. Martine v. Keystone Freight Corp., 2012 U.S. Dist. LEXIS 26102 (E.D. Pa. Feb. 28, 2012) (Fed. R. Civ. P. 37(a)(1) "require[s] a good-faith attempt to resolve discovery issues before seeking court

---

[2] As a matter of clarity, the Debtors state in their Dismissal Motion that their first discovery request was propounded on the Trustee on September 19, 2012 and their second request on January 4, 2012. The Court will assume that the Debtors meant that the second discovery request was propounded on the Trustee on January 4, 2013. To be clear, however, the Court's ruling is irrespective of the dates of the discovery requests.

[3] Fed. R. Civ. P. 37(a)(1) states, in pertinent part, as follows:

> (1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the **movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. (emphasis added)**

6

intervention."); Leimbach v. Lane (In re Lane), 302 B.R. 75, 78-79 (Bankr. D. Idaho 2003) ("This meet and confer requirement was added in 1993 'in order to encourage litigants to resolve discovery disputes by informal means before filing a motion with the court.'") (citations omitted). Instead, the Debtors filed their so-called "emergent" Dismissal Motion close to *three* whole months *after* the close of discovery,[4] and nearly *1 ½ years after* the Trustee filed the Complaint. In that regard, and for the reasons set forth above, the Court will deny the Debtors' Dismissal Motion, opting instead to proceed to the merits of the case.

### V.     Summary Judgment Motion

#### A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5] As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1).

---

[4] On November 3, 2012, the Court entered an order extending the previous discovery deadline to November 14, 2012. See Docket No. 22. No further extensions were granted.

[5] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in Guiliano v. Coy (In re Coy):

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, *6-7 (Bankr. D. Del. Aug. 22, 2011).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Disputed material facts are those "that might affect the outcome of the suit under the governing law." Id. at 248. A dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial. Celotex Corp., 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine [dispute]" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f). Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion

the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972). If the non-moving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at 249.

### B. Trustee's Avoidance Powers

Although the caption of the Trustee's Complaint seeks alternative forms of relief, the substance of the Complaint seeks to avoid the transfer of the Property at issue either: (i) as a fraudulent transfer pursuant to 11 U.S.C. § 548 (in Count I of the Complaint); (ii) as a preference pursuant to 11 U.S.C. § 547 (in Count II of the Complaint); or (iii) as a lien creditor or successor to certain creditors pursuant to 11 U.S.C. § 544 (also in Count II of the Complaint). The Court will address each of the claims presented by the Trustee in his Complaint.

#### (i) Preferential Transfers

Under 11 U.S.C. § 547, a trustee or the debtor-in-possession can dismantle select transactions between a debtor and its creditors that occurred within the ninety (90) days [or a year if the creditor is an "insider"] immediately preceding the bankruptcy filing. Barnhill v.

9

Johnson, 503 U.S. 393, 394 (U.S. 1992); see also 11 U.S.C. § 110; see also Rzasa-Ormes v. Arturi, D'Argenio, Guaglardi & Meliti, LLP, 2010 Bankr. LEXIS 3747, 9-11 (Bankr. D.N.J. Oct. 25, 2010). If the bankruptcy court declares that an avoidable preference has occurred, the creditor must forfeit its improved position and must return any preferential transfers it received. Johnson, 503 U.S. at 394. Section 547(b) explains the elements of a preferential transfer:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . .
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made . . .
>   (A) on or within 90 days before the filing of the petition; or
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if . . .
>   (A) the case were a case under Chapter 7 of this title
>   (B) the transfer had not been made; and
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Section 547's avoidance power aims "to foster equality of treatment among creditors and to discourage creditors from incapacitating a firm by racing to attach its assets shortly before bankruptcy." Pineview Care Ctr. v. Mappa (In re Pineview Care Ctr.), 152 B.R. 703, 705 (D.N.J. 1993); see also MR Wind Down Co. v. Rock-Tenn Converting Co. (In re Markson Rosenthal & Co.), 2009 Bankr. LEXIS 3901 (Bankr. D.N.J. Oct. 27, 2009). In a preference action, § 547(b)

places the burden of proof on the trustee or the debtor-in-possession to establish the avoidability of a transfer by a preponderance of the evidence. See 11 U.S.C. § 547(g).

In this case, it is clear to the Court that additional factual information is necessary in order to properly rule on the Trustee's preference claim, thus precluding the granting of summary judgment at this time. For example, it has not yet been conclusively established, by either party, whether or not the Debtors were insolvent at the time of the transfer, whether the transferees were insiders,[6] or whether there existed an antecedent debt at the time of the transfer. Accordingly, the Court will deny summary judgment with respect to 11 U.S.C. § 547 at this juncture.

### (ii) Fraudulent Transfers

The Trustee's fraudulent transfer allegations are based on both state and federal law. Section 548 of the Bankruptcy Code describes the powers of a Trustee in bankruptcy to avoid fraudulent transfers. The provision grants the Trustee the authority to set aside not only transfers permeated by actual fraud, but also certain other constructively fraudulent transfers. Forman v. Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co.), 254 B.R. 104, 114-115 (Bankr. D.N.J. 1999), citing Bfp v. Resolution Trust Corp., 511 U.S. 531, 535 (U.S. 1994). With respect to actual fraud, 11 U.S.C. § 548(a)(1)(A) states, in relevant part, as follows:

> Fraudulent transfers and obligations.
>
> (a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including

---

[6] Assuming the transfer occurred on July 8, 2008, such transfer date occurred prior to the 90 day preference period. Thus, the Trustee would be required to demonstrate insider status with respect to the transferees in order to utilize the larger one year look back period.

11

> any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with **actual intent to hinder, delay, or defraud** any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted…

See 11 U.S.C. § 548(a)(1)(A) (emphasis added). Similarly, N.J. Stat. § 25:2-25(a)[7] states, in relevant part, as follows:

> Transfers fraudulent as to present and future creditors.
>
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With **actual intent to hinder, delay, or defraud** any creditor of the debtor…

N.J. Stat. § 25:2-25(a) (emphasis added).

In this case, the Court notes that resolving the Debtors' intent with respect to actual fraud and the transfer at issue is difficult on this record. Although the Court may consider the presence or absence of certain "badges of fraud" in determining the intent of the Debtors -- see Zazzali v. 1031 Exch. Group LLC (In re DBSI, Inc.), 476 B.R. 413, 420 (Bankr. D. Del. 2012) ("Because of the difficulty in proving actual fraudulent intent, the court can infer the necessary intent from the circumstances of the case, particularly the presence or absence of 'badges of fraud.'") -- the Court finds it premature to rule on actual fraud, whether under federal or state law, without

---

[7] The Trustee's power to avoid fraudulent transfers under N.J. Stat. § 25:2-25(a) stems from 11 U.S.C. § 544.

further developing the record. See In re Metro Shippers, Inc., 78 B.R. 747, 751 (Bankr. E.D. Pa. 1987), citing Empire Electronics v. United States, 311 F.2d 175 (2d Cir. 1962) ("In general, questions of motive and intent are particularly difficult to resolve without trial, because subjective feelings resist reduction to the forms of evidence which can be submitted on motion for summary judgment.").

The Court also finds difficulty in deeming the transfer constructively fraudulent at this time. A transfer of property is deemed constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) if, within two years prior to the filing of its bankruptcy petition, the transferor receives "less than reasonably equivalent value" in a transaction and the transferor:

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B); see also Jurista v. Amerinox Processing, Inc., 2013 U.S. Dist. LEXIS 49515 (D.N.J. Mar. 28, 2013). Similarly, under New Jersey's Uniform Fraudulent Transfer Act a transfer may be considered constructively fraudulent if, "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," a debtor either (i) "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or (ii) "[i]ntended to incur, or

13

believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due." N.J. Stat. § 25:2-25(b).

As with the elements necessary to prove a preference claim, establishing a constructive fraud claim requires the Trustee in this case to ultimately demonstrate, *inter alia*, that the Debtors were insolvent on the date of the transfer or became insolvent as a result of the transfer, or that the transferees were insiders. For the reasons expressed above, with respect to the Trustee's preference claim, the Court does not have sufficient factual information to rule on insolvency or insider status. Thus, summary judgment with respect to fraudulent transfers, on state and/or federal grounds, is denied at this time.

### (iii) Trustee's "Strong-arm" Powers

Section 544(a) provides the Trustee with the ability to avoid any transfer of property that is voidable by certain hypothetical creditors or a bona-fide purchaser. See In re D'Angelo, 491 B.R. 395, 403 (E.D. Pa. 2013), citing Dunes Hotel Associates v. Hyatt Corp., 245 B.R. 492, 500 (D.S.C. 2000). The court in D'Angelo succinctly explained the power given to the Trustee under 11 U.S.C. §544(a) as follows:

> Pursuant to 11 U.S.C. § 544(a)(1)-(3), "federal law confers on the debtor-in-possession the ability to avoid any transfer of property that is voidable by a hypothetical judicial lien creditor, a hypothetical execution creditor, or a hypothetical bona fide purchaser of real property." Dunes Hotel Associates v. Hyatt Corp., 245 B.R. 492, 500 (D.S.C. 2000). Accordingly, "[u]nder 11 U.S.C. § 544(a), unperfected security interests are avoidable and can be relegated to the status of general unsecured claims." In re First T.D. & Inv., Inc., 253 F.3d 520, 525 (9th Cir. 2001); see also In re Roser, 613 F.3d 1240, 1243 (10th Cir. 2010) (noting that "In general, the trustee can avoid liens that are unperfected when the petition for bankruptcy is filed"); In re McLaughlin, 2006 U.S.

> Dist. LEXIS 92350, 2006 WL 3796421, at *4 (D.N.J. Dec. 20, 2006) (finding that § 544(a) "gives the Trustee the power to defeat any unperfected security interests as of the date of the filing") (quoting Batt v. Scully, 168 B.R. 541, 545 (D.N.J.1994)). Thus, to maintain an action under § 544(a), a Trustee is required to set forth sufficient facts that, if true, would establish the unperfected status of the lien sought to be avoided.

In re D'Angelo, 491 B.R. 395, 403 (E.D. Pa. 2013). Section 544 is not limited to lien avoidance and may be employed by a trustee to invalidate transfers of real property avoidable under either federal or state law. Moreover, the Trustee is granted the powers under 11 U.S.C. § 544(a) *as of the filing* of the debtor's bankruptcy case. See Picard v. JPMorgan Chase & Co., 460 B.R. 84, 94 (S.D.N.Y. 2011) ("[U]nder the statute (and its predecessors), 'the rights of creditors — whether they are existing or hypothetical — to which the trustee succeeds are to be ascertained as of 'the date of bankruptcy,' not at an anterior point of time.'") (citations omitted).

In the case at bar, it is unclear under which section of 11 U.S.C. § 544 the Trustee is seeking to avoid the transfer of the Property. To the extent the Trustee seeks to avoid the transfer under 11 U.S.C. § 544(a), the Court finds that the Trustee cannot establish a claim under that section. Assuming, *arguendo*, that the Trustee is correct that the operative date of transfer of the Property was when the deed was recorded on July 7, 2008, it was only up until that time that the transfer could potentially be avoided by a judicial lien creditor or execution creditor. Because the Trustee was not endowed with the avoidance powers under 11 U.S.C. § 544(a) until the Petition Date, several months after the alleged transfer date, the Trustee cannot assert his § 544(a) powers at this time. Moreover, the Trustee cannot utilize § 544(a) by stepping into the shoes of an actual creditor of the Debtors. See Christians v. Larkin, Hoffman, Daly & Lindgren,

Ltd. (In re Bastyr), 1990 Bankr. LEXIS 3048 (Bankr. D. Minn. July 13, 1990) ("[A] bankruptcy trustee can never be deemed to stand in the shoes of a creditor with notice under § 544(a), since a trustee invoking § 544(a) is not deemed to stand in the shoes of any actual creditor."). Accordingly, summary judgment with respect to 11 U.S.C. § 544(a) is granted in favor of the Debtors.

To the extent the Trustee seeks to avoid the transfer of the Property under 11 U.S.C. § 544(b), the Court undertakes a different analysis, in that the Trustee may step into an actual creditor's shoes under that section. "The avoidance power provided in § 544(b) is distinct from others because a trustee or debtor-in-possession can use this power only if there is an unsecured creditor of the debtor that actually has the requisite non-bankruptcy cause of action." In re D'Angelo, 491 B.R. at 404, citing In re Cybergenics Corp., 226 F.3d 237, 243 (3d Cir. 2000). "As such, to maintain an action under § 544(b) a Trustee or debtor-in-possession is required to allege the existence of such an unsecured creditor." Id.

The Court finds that issues of fact remain under a § 544(b) analysis. While actual creditors do in fact exist, into whose shoes the Trustee may step, the record thus far does not adequately demonstrate whether or not those creditors possess a sufficient non-bankruptcy cause of action. Pertinently, there is a dispute of material fact as to whether the Debtors provided, and more importantly whether the relevant creditors received, adequate notice of the instrument evidencing the transfer, which goes directly to the heart of such creditors' non-bankruptcy claims pursuant to New Jersey's recording statute, N.J.S.A. 46:26A, *et seq.* See Lieberman v. Arzee Mid-State Supply Corp., 306 N.J. Super. 335, 341 (App.Div. 1997) ("It is settled that a deed

transfers a property interest upon delivery…. However, actual or constructive notice is required to affect the rights of third parties such as judgment creditors. New Jersey is a "race-notice" state that protects judgment creditors who record their instruments first without notice of *unrecorded instruments*."), citing Tobar Construction Co. v. R.C.P. Associates, 293 N.J. Super. 409, 680 A.2d 1121 (App.Div.1996) (emphasis added).  Therefore, the Court finds that summary judgment as to 11 U.S.C. § 544(b) is inappropriate at this stage of the litigation.

### VI.    Conclusion

In light of the foregoing, the Court will: (i) deny the Dismissal Motion with prejudice; (ii) deny without prejudice the Summary Judgment Motion with respect to the Trustee's claims under 11 U.S.C. §§ 544(b), 547, and 548, as well as claims under New Jersey's Uniform Fraudulent Transfer Act; and (iii) grant the Summary Judgment Motion with respect to the Trustee's claim under 11 U.S.C. § 544(a).  The Court will enter a form of order consistent with its findings.

/s/ Michael B. Kaplan
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: September 30, 2013